UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD S. BALLEYDIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00925-SRC |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Memorandum and Order</u>**

Donald Scott Balleydier seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying his protective application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85. The Court affirms the Commissioner's decision.

## I. Procedural history

In March 2022, Balleydier applied for supplemental security income benefits, alleging disability beginning on February 25, 2022. Tr. 234–45 (while Balleydier's Complaint mentions "Social Security Disability Benefits," doc. 1 at 3, the Court treats this mention as a typo, because his Complaint, *see id.* at 1, his opening brief, *see generally* doc. 14, and the administrative record, *see* Tr. 234–45, discuss only supplemental security *income* benefits). Balleydier's claims were denied initially, Tr. 112–21, and on reconsideration, Tr. 123–30. Then, following a hearing in April 2023, the Administrative Law Judge (ALJ) found in May 2024 that Balleydier was not disabled. Tr. 23–35. In May 2025, the Appeals Council denied Balleydier's request for review,

Tr. 1–7, making the ALJ's decision final for the purposes of this Court's review, *see* 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

## II. Standard for determining disability under the Act

Under the Social Security Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment[] [that] significantly limits [the] [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (fourth alteration in original) (quoting 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (first citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); then citing *id.* at 158 (O'Connor, J.,

concurring); and then citing 20 C.F.R. § 404.1521(a)); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)); *see also* 20 C.F.R. § 416.945(a)(1). While RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination[] if necessary, and making every reasonable

effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of producing evidence showing the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

## III. The ALJ's decision

Applying the foregoing, the ALJ concluded that Balleydier "has not been under a disability within the meaning of the Social Security Act since March 7, 2022, the date the application was filed." Tr. 24. After determining that Balleydier "has not engaged in substantial gainful activity since March 7, 2022," the ALJ found that Balleydier had the following "severe combination of impairments": cerebrovascular accident, diabetes, hypertension, depression, and anxiety. Tr. 25–26. The ALJ then determined that none of these impairments individually, or in combination, met or medically equaled the impairments listed in 20 C.F.R. §§ 416.920(d), 416.925, 416.926. Tr. 26. After considering all of the evidence in the record, the ALJ concluded that Balleydier has the RFC to:

> perform medium work as defined in 20 C[.]F[.]R[.] [§] 416.967(c) except he is limited to the following: frequently balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to hazards; able to understand, remember and carry out simple instructions and use judgment to make simple work-related decisions; able to adapt to occasional changes in a routine work setting; able to maintain concentration and persistence for at least two hours at a time throughout an eight hour work day with regular breaks; cannot perform work requiring a specific production rate (such as assembly line or work that requires hourly quotas); limited to jobs that have no tandem tasks (with "tandem tasks" defined as tasks required to be performed with at least one other coworker contemporaneously (such as in an assembly line); and for the following limitations, the term "interaction" is defined as meaning "oral communications:" limited to no direct interaction with the public, limited to occasional interaction with co-workers and, after initial training period, limited to occasional interaction with supervisors.

Tr. 28. The ALJ then found that "the capacity for past relevant [work]" and "[t]ransferability of job skills" are not material, and that Balleydier can perform "jobs that exist in significant numbers in the national economy." Tr. 33–35. Accordingly, the ALJ determined that Balleydier was not disabled since March 7, 2022, to the date of the decision. *See* Tr. 35.

**IV. Standard of review**

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports his decision. 42 U.S.C. §§ 1383(c)(3), 1405(g). If it does, the Court must affirm the decision. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and

substantial evidence." *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

**V. Discussion**

Balleydier disputes the ALJ's finding that he was not disabled. Doc. 14 at 13. He claims that "[t]he RFC determination was not supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence." *Id.* at 4. Balleydier highlights the ALJ's alleged failure to properly evaluate the opinion evidence of Dr. Stone Kraushaar and state agency medical consultants. *Id.* at 5–13. And because the ALJ discounted both sets of opinions, "there was no opinion support for the mental limitations in the RFC," Balleydier claims. *Id.* at 5. "[I]n rejecting all mental opinions of record," Balleydier argues, "the ALJ was left with no guidance in crafting [Balleydier]'s mental limitations for the RFC, and therefore the RFC limitations appear to be based on the ALJ's lay substitution of [her] own interpretation of the medical record." *Id.* at 11. Balleydier argues that "[w]here the ALJ . . . draws upon [her] own inferences from the medical evidence, unless the inferences are supported by opinions from treating or consultative experts, they do not constitute substantial evidence." *Id.* at 11–12 (first quoting *Hess v. Colvin*, No. 4:14-cv-01593-CDP, 2015 WL 5568056, at *11 (E.D. Mo. Sept. 22, 2015); then citing *Pate-Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009)). Balleydier alleges that these errors are "not harmless." *Id.* at 12–13.

Section 416.920c explains how ALJs must consider medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c. The ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). The "most important factors" ALJs consider when evaluating "the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency." *Id.*

Turning first to supportability, "[t]he more relevant the objective medical evidence and supporting explanations" are that support a medical opinion, "the more persuasive" it will be to the ALJ. 20 C.F.R. § 416.920c(c)(1). And for consistency, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources . . ., the more persuasive [it] will be" to the ALJ. 20 C.F.R. § 416.920c(c)(2)). When examining the medical-opinion evidence, the ALJ need not "explicitly reconcile every conflicting shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (cleaned up) (citation omitted); *see also* 20 C.F.R. § 416.920c(b)(1) (noting that ALJs "are not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually").

Instead, the ALJ's "reasoning need only be clear enough to allow for appropriate judicial review." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021). "The ALJ's brevity is not reversible error." *Id.* at 631. And alleged deficiencies in opinion writing are not "sufficient reason[s] for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019) (cleaned up) (citation omitted). So any argument that the "conclusory form of the ALJ's decision alone justifies remand" lacks merit. *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999).

**A. Dr. Stone Kraushaar's medical opinion**

The ALJ described Dr. Kraushaar's findings as follows:

> During [Balleydier's] exam, [Dr. Kraushaar] observed that the claimant made moderate eye contact. The examiner noted that he spoke with a slur and somewhat slowly. He reported that the claimant appeared to be moderately well groomed. The examiner advised that his responses were coherent, relevant, and logical. He assessed the claimant's affect to be flat and mood to be mostly depressed and somewhat anxious. The examiner noted that the claimant participated actively and responded to questions. He advised that the claimant did not demonstrate flight of ideas, perseverations, or circumstantial speech. The examiner stated that the claimant did not exhibit preoccupations, thought disturbances, perceptual distortions, hallucinations, or delusions. He reported that the claimant was able to name the current president and that he was able to name three past presidents. The examiner found that he had moderate to marked impairment in the ability to understand, remember, or apply information based on his report of having some inconsistency with his memory and difficulty with concentration but understanding pretty well. He assessed that the claimant had marked impairment in ability to interact with others based on his report that he isolates the majority of the time and that it is difficult for him to make friends. The examiner opined that he had no impairment or deficiencies of concentration, persistence, or maintaining pace. He indicated that the claimant had moderate to marked impairment in the ability to adapt and manage oneself based on his report of being able to care for basic needs consistently about 25 percent of the time, doing some limited cooking and cleaning, straightening up, and using the microwave. The examiner diagnosed major depressive disorder and anxiety disorder.

Tr. 30–31; *see also* Tr. 763–67. The ALJ ultimately found Dr. Kraushaar's opinion unpersuasive, "because it is not well supported by the medical signs and findings during the exam, such as [Balleydier's] participating actively and responding to questions and being able to name the current president and three past presidents, and because [the opinion] is inconsistent with the medical record." Tr. 33. The ALJ noted that "no record [exists] of inpatient psychiatric treatment or hospitalizations." *Id.* "The records show that [Balleydier's] mental impairments are stable with ongoing treatment and that he is able to communicate with others, act in his own interest, and perform most ordinary activities." *Id.*

Balleydier argues that "[t]he ALJ's reliance on [his] ability to respond to questions and name past presidents . . . does little to contradict Dr. Kraushaar's findings as it simply proves

[Balleydier's] impairments were not all-encompassing, and no such requirement exists to prove disability." Doc. 14 at 7–8. Second, he argues that "[t]he ALJ also claimed Dr. Kraushaar's opinion was inconsistent with his finding that [Balleydier] was 'stable with ongoing treatment'. . . . However, being 'stable' does not equate to non-disability." *Id.* at 8; *see also id.* at 10 (claiming that the ALJ "failed to explain why a stable condition equates to being non-disabling[] and he failed to consider the subjective aspect of mental evaluations"); *but see Hensley*, 829 F.3d at 933–34 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (first citing *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009); and then citing 20 C.F.R. 404.1530(a)). Third, Balleydier claims that the "ALJ went on to note [his] ability to perform 'most ordinary activities' . . . , but this too does little to refute Dr. Kraushaar's opinion." Doc. 14 at 8; *see* doc. 20 at 2–3. He claims the "ALJ failed to explain what these activities were or how they suggested an ability to perform full-time work." Doc. 14 at 10; *but see* Tr. 31, Tr. 73–74, Tr. 296–302.

First, in finding Dr. Kraushaar's opinion unsupported and inconsistent with the medical record, the ALJ relied on both evidence from Dr. Kraushaar's assessment and in the record as a whole. *See* Tr. 30–33. Balleydier diminishes the ALJ's reliance on evidence relating to Balleydier's stability, ability to answer questions and name past presidents, and ability to perform daily activities, *see* doc. 14 at 7–8, and notes other contrary evidence from the assessment, *id.* at 6–7. In doing so, he invites this Court to "reweigh the evidence presented to the ALJ," which the Court declines to do. *Reece*, 834 F.3d at 908 (citation omitted); *see Cropper v. Dudek*, 136 F.4th 809, 814–15 (8th Cir. 2025) (discussing, in the context of similarly worded language in section 404.1520c, that the permissible bounds of a court's review of persuasiveness are limited "to whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors, not whether [the court] agree[s] with the ALJ's evaluation of the record

evidence on those issues"). The Court will not remand just because "substantial evidence [may] also exist[] in the record that would have supported [Balleydier's desired] outcome," or because another court "would have decided the case differently." *Stoner*, 818 F.3d at 369 (cleaned up) (quoting *Andrews*, 791 F.3d at 928).

Balleydier also discusses the Eighth Circuit's guidance in *Reed v. Barnhart* that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." Doc. 14 (citing 399 F.3d 917, 923 (8th Cir. 2005)). But Balleydier's focus on this evidence—alongside evidence of Balleydier's stability and ability to answer questions and name past presidents—in isolation, *see* doc. 14 at 7–8, ignores all of the ALJ's other reasons, discussed above, for finding Dr. Kraushaar's opinion unpersuasive, *see* Tr. 33; *see also Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding that a claimant's ability to perform ordinary activities, when considered in conjunction with other evidence, supports the claimant's lack of disability); *Reed*, 399 F.3d at 924 (noting that the ALJ must examine the claimant's ability to do daily work "in the light of the [other] record-supported limitations on [the claimant's] ability to perform real-world work").

Next, the ALJ need not "contradict" or "refute" Dr. Kraushaar's opinion to the extent Balleydier desires for substantial evidence to support her RFC. *See* doc. 14 at 7–8. "[N]o requirement [exists] that an RFC finding be supported by a specific medical opinion." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (citing *Hensley*, 829 F.3d at 932). Courts will uphold an ALJ's RFC finding where no medical opinion is directly on point, *Hensley*, 829 F.3d at 930–32 (upholding an RFC in the absence of a direct medical opinion), and where an ALJ finds unpersuasive an on-point medical opinion, *see Bonham v. Bisignano*, 177 F.4th 934, 940–41 (8th Cir. 2026). The ALJ also need not "explicitly reconcile every conflicting shred of medical evidence." *Austin*, 52 F.4th at 729 (cleaned up) (citation omitted). Because an RFC

need not be supported by *any* medical opinion, the ALJ's analysis of Dr. Kraushaar's medical opinion is sufficient for the Court to uphold her RFC.

And contrary to Balleydier's assertion, *see* doc. 14 at 10, the ALJ considered Balleydier's "subjective complaints," noting that "[w]hile [Balleydier's] subjective complaints substantiate the existence of his severe combination of impairments, the record is not persuasive as to a finding of disability . . . ." Tr. 33. And the ALJ noted that a "lack of support for [Balleydier's] subjective complaints" exists in the record. *Id.* Balleydier therefore "seeks a level of explanation not required by the regulations." *Bauer v. Kijakazi*, No. 4:21-cv-176-MTS, 2022 WL 1136140, at *4 (E.D. Mo. Apr. 18, 2022).

**B. The state agency medical opinions of Dr. Charles Watson and Dr. Raphael Smith**

Balleydier notes that "[t]he regulations require the ALJ to clearly explain his consideration of the opinions and identify the evidence supporting his conclusions," doc. 14 at 11, whereas here, Balleydier asserts that "the ALJ's evaluation of these State agency opinions was entirely conclusory with no explanation as to *why* the ALJ found the opinions unsupported and inconsistent," *id.* at 10; *see* doc. 20 at 1–2.

Balleydier's argument appears to center on the paragraph in which the ALJ—despite discussing the evidence in the record before and after—simply notes that the opinions of two state agency doctors are not persuasive, without much explanation as to those experts. *See* Tr. 32–33 (noting without more explanation that the opinions of "the [s]tate agency physicians, Dr. Watson and Dr. Smith[] concerning [Balleydier's] mental limitations" are "less persuasive because they are not well supported by medical signs and findings and are inconsistent with other medical evidence").

But the ALJ need not "explicitly reconcile every conflicting shred of medical evidence." *Austin*, 52 F.4th at 729 (8th Cir. 2022) (cleaned up) (citation omitted). And the Court must read the paragraph concerning the ALJ's evaluation of a medical opinion—not in isolation—but as part of the overall discussion of plaintiff's RFC assessment. *See* 20 C.F.R. § 416.945(a)(3); *Bonham*, 177 F.4th at 940–41; *Trosper v. Saul*, No. 1:20-cv-00051-DDN, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). As noted above, the ALJ's "reasoning need only be clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631. And "[t]he ALJ's brevity is not reversible error." *Id.* Further, alleged deficiencies in opinion writing are not "sufficient reason[s] for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Id.* (cleaned up) (citation omitted).

Concerning Balleydier's mental limitations, the ALJ first noted that, "[i]n relation to [Balleydier's] depression and anxiety, . . . [his] [m]ental status examinations generally indicated that he was cooperative with fair eye contact and that his insight and judgment were fair. Although the record indicates [he] reported some exacerbation of his symptoms and that his medications were adjusted in 2022, he usually reported that he was doing okay throughout 2023." Tr. 31; *see also* Tr. 1144–45, Tr. 1157–59, Tr. 1175–88. Balleydier "also denied suicidal ideation, and . . . no record [exists] of inpatient psychiatric treatment or hospitalizations." Tr. 31. Therefore, the ALJ found that "[t]he records show that his mental impairments are stable with ongoing treatment and that he is able to communicate with others, act in his own interest, and perform most ordinary activities," and "conclude[d] that the intensity, persistence, and limiting effects of [Balleydier's] symptoms are not consistent with or supported by the evidence of record to the degree alleged concerning his mental impairments." Tr. 31; *see also* Tr. 73–74, Tr. 296–302, Tr. 1157–59, Tr. 1175–88.

The ALJ next discussed Dr. Kraushaar's examination, in which the doctor noted, among other things, that Balleydier had "moderate eye contact" and "appeared to be moderately well groomed." Tr. 31; *see also* Tr. 764. And Balleydier's "responses were coherent, relevant, and logical." Tr. 31; *see also* Tr. 764. Balleydier also "did not demonstrate flight of ideas, perseverations, or circumstantial speech." Tr. 32; *see also* Tr. 764. The ALJ also discussed Dr. Watson's and Dr. Smith's findings that Balleydier "could understand, remember, and carry out a two[-]step command involving simple instructions; could concentrate on, understand, and remember unchanging, less than four step instructions[;] . . . and was capable of adapting to changes which are predictable and introduced gradually." Tr. 32; *see also* Tr. 88–93, Tr. 99–105. While the ALJ ultimately found Dr. Kraushaar's, Dr. Watson's, and Dr. Smith's opinions unpersuasive, the Court finds that the ALJ thoroughly examined their findings in making her assessments.

After discussing all of this evidence, the ALJ was not required to repeat her analysis when specifically discussing the persuasiveness of Dr. Watson's and Dr. Smith's opinions. *See Austin*, 52 F.4th at 729 (citation omitted); *Grindley*, 9 F.4th at 631; *Trosper*, 2021 WL 1857124, at *5. The Court finds that the ALJ's assessments relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consolidated Edison Co.*, 305 U.S. at 229); *see Cropper*, 136 F.4th at 814–15. Balleydier again "seeks a level of explanation not required by the regulations." *Bauer*, 2022 WL 1136140, at *4. And his argument that the "conclusory form of the ALJ's decision alone justifies remand" lacks merit. *Senne*, 198 F.3d at 1067.

**C. The necessity for any supporting medical opinion**

Balleydier finally argues that "in rejecting all mental opinions of record, the ALJ was left with no guidance in crafting [Balleydier's] mental limitations for the RFC, and therefore the

RFC limitations appear to be based on the ALJ's lay substitution of [her] own interpretation of the medical record." Doc. 14 at 11; *see* doc. 20 at 3–4. And "[w]here the ALJ . . . draws upon [her] own inferences from the medical evidence, unless the inferences are supported by opinions from treating or consultative experts, they do not constitute substantial evidence." Doc. 14 at 11–12 (cleaned up) (first quoting *Hess*, 2015 WL 5568056, at *11; then citing *Pate-Fires*, 564 F.3d at 946–47).

Balleydier claims that "no opinion [provided any] support for the mental limitations in the RFC." Doc. 14 at 5. He argues that "every opinion of record agreed [Balleydier] had moderate or marked limitations, yet the ALJ rejected those conclusions in order to reach one based seemingly on her lay interpretation of [Balleydier]'s mental health treatment." *Id.* at 12. And therefore, he claims that "[t]he present RFC goes against this Court's holding in *Hess* by relying on ALJ inferences that were not supported by consultative, treating, or non-examining opinions. Consequently, such an RFC was not supported by substantial evidence." *Id.*

Balleydier cites an opinion from another judge in this district, *see id.*, which notes that "[u]nless the [ALJ's] inferences are supported by opinions from treating or consultative experts, they do not constitute substantial evidence." *Hess*, 2015 WL 5568056, at *11. But the Eighth Circuit counsels, while "an ALJ's assessment of [an RFC] must be supported by some medical evidence of the claimant's ability to function in the workplace, . . . no requirement [exists] that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (citation omitted). Again, Courts will uphold an ALJ's RFC finding where no medical opinion is directly on point, *see id.* at 930–32 (upholding an RFC in the absence of a direct medical opinion), and where an ALJ finds unpersuasive an on-point medical opinion, *see Bonham*, 177 F.4th at 940–41.

Here, as noted above, the ALJ relied on ample medical evidence to determine Balleydier's mental limitations for the RFC. *See* supra Part V.B. The Court rejects the contention that the ALJ was "playing doctor" when weighing the evidence differently than how Balleydier would have liked. *See* doc. 12 (citing *Pate-Fires*, 564 F.3d at 947). The Court may not "reweigh the evidence presented to the ALJ." *Reece*, 834 F.3d at 908 (quoting *Johnson*, 788 F.3d at 872) (citation modified). And again, it does not matter whether "substantial evidence also exists in the record that would have supported [Balleydier's desired] outcome," or whether another court "would have decided the case differently." *Stoner*, 818 F.3d at 369 (quoting *Andrews*, 791 F.3d at 928). Therefore, the Court finds that the ALJ relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103.

**VI. Conclusion**

The Court affirms the Commissioner's decision and dismisses with prejudice Balleydier's [1] Complaint. A judgment accompanies this Memorandum and Order.

So ordered this 19th day of August 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE